In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1934

ROBERT S. JOHNSON,

*Plaintiff-Appellant*,

*v.*

GDF, INC. d/b/a DOMINO'S PIZZA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 CV 3996—**Ronald A. Guzman**, *Judge.*

ARGUED OCTOBER 21, 2011—DECIDED FEBRUARY 13, 2012

Before BAUER and TINDER, *Circuit Judges* and MAGNUS-STINSON, *District Judge*.[*]

TINDER, *Circuit Judge.* When a prevailing party is entitled to "a reasonable attorney's fee," *see, e.g.,* 42 U.S.C. § 1988; 29 U.S.C. § 216(b), the district court must make

[*] The Honorable Jane E. Magnus-Stinson, District Judge for the United States District Court for the Southern District of Indiana, sitting by designation.

that assessment, at least initially, based on a calculation of the "lodestar"—the hours reasonably expended multiplied by the reasonable hourly rate—and nothing else. *See Pickett v. Sheridan Health Care*, ___ F.3d ___, No. 11-2146, 2011 WL 6287923, *4-*5 (7th Cir. Dec. 15, 2011). In limited circumstances, once calculated, the lodestar amount may be adjusted. *See Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1673-74 (2010); *Hensley v. Eckerhart*, 461 U.S. 424, 430, 436 (1983); *Robinson v. City of Harvey*, 489 F.3d 864, 871-72 (7th Cir. 2007). This case, however, does not involve the acceptability of an adjustment but only the correct calculation of the lodestar (plus costs). And although a district court has significant discretion in determining the lodestar, it cannot base its decision on an irrelevant consideration or reach an unreasonable conclusion. *See Pickett*, 2011 WL 6287923, at *8 (abuse of discretion to determine attorney's fee based on an irrelevant consideration); *United States v. Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d 378, 386 (7th Cir. 2010) ("The concept of 'abuse of discretion' recognizes the possibility that a judge will at times reach a result that persuades the appellate court that he made an unreasonable ruling. . . ."). In this case, as we will see, the district court did both. So, despite our support for the idea that "[a] request for attorney's fees should not result in a second major litigation," *Hensley*, 461 U.S. at 437, we must reverse and remand this case for a new calculation of fees.

To understand this fee dispute, we have to go back to 2005 when Robert S. Johnson was a pizza maker at GDF's Domino's Pizza franchise in Oak Park, Illinois. In May

of that year, Johnson filed a class-action complaint in state court seeking overtime wages for himself and similarly-situated employees under the Illinois Minimum Wage Law, 820 ILCS § 105/4a, and the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1). In July 2005, Johnson stopped working at Domino's. (According to Johnson—and the jury in the subsequent federal trial agreed—he was fired in retaliation for his overtime lawsuit. GDF sees things differently and has argued that he quit voluntarily or was terminated for violating Domino's sexual harassment policy.) In April 2006, GDF deposed Johnson and learned at least two important things: First, Johnson was reemployed as of August 2005 by two cab companies and a bakery and, second, Johnson had criminal convictions that he did not disclose when he applied to work at Domino's.

Class certification in the state suit was denied in July 2006. One year later, in July 2007, Johnson filed this suit in federal court, alleging that he was fired in retaliation for his overtime claim in violation of the FLSA, 29 U.S.C. § 215(a)(3). As trial in the state suit approached, GDF offered to settle "everything"—the state *and* federal suits—for $25,000. Johnson rejected the offer. The state suit was resolved by a consent judgment a month later and GDF paid Johnson $4,328.77 in overtime wages plus interest and attorney's fees. Meanwhile the federal suit rolled on. The Final Pretrial Order states that "[t]he possibility of settlement of this case was considered" but the parties concede that other than the early offer to "settle everything" there was no settlement talk or even a request for a settlement conference, nor was there a

Rule 68(a) offer of judgment, not even one limited to the issue of liability. There was, however, a three-day trial. On the third day, the jury returned a verdict for Johnson, awarding him $1,000 in back pay and $4,000 in punitive damages. Johnson filed a motion to amend the judgment to include liquidated damages and GDF filed a motion for judgment as a matter of law. The district court denied both motions and the parties appealed. After mediation the appeals were dismissed with GDF paying Johnson an additional $5,455. The only remaining matter was attorney's fees and the case was remanded on that issue alone.

As the prevailing party, Johnson is entitled to "a reasonable attorney's fee to be paid by defendant, and the costs of the action." 29 U.S.C. § 216(b). Johnson's attorney, Earnest T. Rossiello, moved for $112,566.87 in fees and expenses, billing 182.66 hours at $600 per hour for himself and 8.33 hours at $275 per hour for his associates. His motion included, among other supporting documents, affidavits from employment attorneys practicing in the same market. In response, GDF argued that Johnson wasn't actually the prevailing party, and so wasn't entitled to any fees, because Rossiello's contingent fee agreement with Johnson—33.33% of any settlement, with guaranteed payment of the first $8,500, plus any attorney's fees awarded under 29 U.S.C. § 216(b)—left Johnson with nothing. In the alternative, GDF argued that Rossiello should be compensated for 47.08 hours, at most, at no more than $375 per hour. GDF's response concluded with a pages-long discussion of court opinions criticizing Rossiello's litigation tactics in other cases

and discussing his history with the Illinois Attorney Registration and Disciplinary Commission.

The fee dispute was referred to a magistrate judge, who described this case as "yet another example of Ernest T. Rossiello's self-serving litigation tactics, where he places his own financial interests ahead of his client." He went on to criticize the contingent fee arrangement and concluded that the only reason the case lasted as long as it did was because Rossiello consistently over-represented Johnson's damages. The case would have settled quickly, he surmised, if Rossiello would have been honest about his client's damages. Relying on *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544 (7th Cir. 1999), a case in which Rossiello's fees were cut significantly because he unnecessarily delayed a settlement, the magistrate judge concluded that a settlement should have been reached within three hours. As for Rossiello's hourly rate, the magistrate judge rejected Rossiello's submissions and settled on $375 per hour, "the highest rate awarded to Rossiello by a Northern District court in an FLSA case where his fees have been challenged." All associate time was cut. For costs, the magistrate judge recommended $364.20—$350 for the filing fee and $14.20 for copies. All told, he recommended an award of $1,864.20. The district court adopted the magistrate judge's Report and Recommendation in full. In particular, the district court agreed that if Johnson's damages had been candidly disclosed—if Rossiello hadn't misrepresented his damages until the start of trial—the case would have settled quickly. On Rossiello's hourly rate, the district court

agreed that the relevant measure is Rossiello's rate in cases where his fee had been challenged and so agreed that $375 per hour was correct.

We review the district court's award of attorney's fees for abuse of discretion and its legal analysis and methodology de novo. *Pickett*, 2011 WL 6287923, at *2-*3; *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009). Because this is a dispute about the correct calculation of plaintiff's "reasonable attorney's fee" as set by the lodestar, "plus costs," 29 U.S.C. § 216(b), our review will follow the three determinations required to set that figure: (1) the number of hours reasonably expended by plaintiff's counsel, (2) the reasonable hourly rate for those services, and (3) costs. *See Anderson*, 578 F.3d at 544 (citing *Hensley*, 461 U.S. at 433).

*Hours Reasonably Expended*. GDF must pay for hours reasonably expended by Rossiello and his associates. That means GDF is not required to pay for hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *Spegon*, 175 F.3d at 552. Applying *Spegon*, the district court concluded that all but four of the one hundred and ninety billed hours were unnecessary.

*Spegon* involved FLSA claims made by Kenneth Spegon, a church maintenance man, for overtime and retaliatory dismissal. 175 F.3d at 549. From the start, the Diocese accepted responsibility for its failure to pay overtime, characterizing it as a simple mistake. The parties disagreed, however, about the *amount* of overtime due. Spegon made an initial settlement demand for $6,600 that

included more than $3,600 in fees. After a hearing, the Diocese made an offer of judgment for "$1,100 plus court costs and a reasonable attorney's fee to be determined by the court." *Id.* Spegon accepted. For attorney's fees, Spegon initially requested $7,280.70. That, unsurprisingly, didn't go over too well. The district court cut all but 4.6 hours of Rossiello's time, and then cut those hours in half due to Spegon's limited success (he didn't prevail on the retaliation claim). The district court concluded that "within three hours, an attorney of Rossiello's experience and skill could have met with Spegon, assessed his claim, called the Bishop and negotiated a settlement." *Id.* at 551. We affirmed, explaining that the only issue in dispute was overtime and that involved a simple calculation. *Id.* The many hours Rossiello wanted to charge were unnecessary given that the Diocese "admitted from the outset of the litigation that it had inadvertently failed to pay overtime." *Id.* at 553.

Critical differences between this case and *Spegon* make it unreasonable to apply *Spegon* here as a quick-settlement rule. Importantly, in *Spegon*, unlike this case, liability was uncontested, the parties made formal settlement offers, and, most obviously, *Spegon* involved a pretrial settlement, not a trial.

GDF insists, and the district court agreed, if Johnson would have only revealed the true value of his claim for back pay—if he would have disclosed that it was $1,000 and not $10,000—this case would have settled quickly. Johnson's dissembling, GDF argues, left it in

the dark; how could GDF possibly settle? GDF, however, was not in the dark. The district court did not mention that GDF knew (based on Johnson's April 2006 deposition in the state case) that Johnson was employed within ten weeks of his termination by Domino's. In fact, GDF knew he had three jobs. Moreover, GDF knew that the period during which Johnson would have had *any* claim for back pay could go no further than the date of his deposition, when he admitted lying on his application to work at Domino's. That after-acquired evidence cut off Johnson's potential recovery, according to the district court's summary judgment ruling.

GDF objects that it didn't know Johnson's *wages* at his new jobs and so knowing he was employed wasn't enough to accurately measure Johnson's claim. But defendant is charged with having some common sense. Johnson went from being a pizza maker to driving a cab and his claim for *any* back pay could span only a few months. The record simply does not support the assertion that Johnson's small back pay claim caught GDF unawares.

And even if GDF was surprised by the small back pay claim, this case is still a world apart from *Spegon*, where, critically, liability had been conceded. GDF conceded nothing. This was not a dispute about the *amount* of back pay and liquidated damages Johnson was entitled to, it was about whether Johnson was fired *at all*. GDF flatly denied it. As mentioned above, in the district court GDF maintained (both) that Johnson walked off the job and that he was fired for violating a sexual harass-

ment policy. And even after GDF lost at trial, it continued its fight with a post-verdict motion for judgment as a matter of law and an appeal.

GDF, it's true, did offer to "settle everything" for $25,000 just before the state court trial was scheduled to begin. And substantial settlement offers should be considered in determining reasonable attorney's fees. *Moriarty v. Svec*, 233 F.3d 955, 967 (7th Cir. 2000). But Johnson rejected that offer and that was reasonable enough given the possibility that he might (and did) recover liquidated and punitive damages in the federal case. The case then continued without mention of settlement other than the passing reference in the Final Pretrial Order. Again, unlike *Spegon*, there was no offer of judgment and no settlement, but instead a three-day trial and an appeal.

In short, given the fundamental differences between this case and *Spegon*, it was unreasonable, and therefore an abuse of discretion, for the district court to deny nearly all of Rossiello's hours "[f]or the same reasons articulated in *Spegon*." GDF knew (approximately) what it was up against and proceeded to trial, without an offer of judgment or any concession of liability. GDF tested its luck and lost. Now it must pay for the attorney hours *reasonably required* to see the case through trial, to appeal, and for the collection of fees.

*Hourly Rate.* On remand, the hours reasonably expended should be multiplied by "a reasonable hourly rate . . . derived from the market rate[.]" *Pickett*, 2011 WL 6287923, at *3 (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir.

2003)); *see also People Who Care v. Rockford Bd. of Educ. Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996). The best evidence of an attorney's market rate is his or her actual billing rate for similar work. *Pickett*, 2011 WL 6287923, at *3. In this case, the district court concluded that Rossiello didn't establish his actual billing rate (which he claims is $600 per hour) because the evidence he presented didn't show how much he was actually paid and for what kind of work. That was within the district court's discretion. The district court then properly turned to "the next best evidence" of the market rate for an attorney, like Rossiello, who maintains a contingent fee, namely, "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Id.* (quoting *Spegon*, 175 F.3d at 555). It is the fee applicant's burden to establish his or her market rate; if the applicant fails, the district court may make its own rate determination. *Id.* at *3 (citing *Uphoff v. Elegant Bath Limited*, 176 F.3d 399, 409 (7th Cir. 1999)).

In considering the next best evidence, the district court disregarded Rossiello's third-party affidavits because the affiants declared that they do not bill at different rates for FLSA and Title VII cases. The district court decided that billing rates for FLSA and Title VII cases must be different—other Northern District of Illinois judges have said that FLSA cases are less complex than Title VII cases and we've mentioned this observation too. *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707-08 (7th Cir. 2001). Rossiello, however, is entitled

to the *prevailing market rate* for his services. It was an abuse of discretion for the district court to decide that the market *must* distinguish between FLSA and Title VII cases. Either it does or it doesn't, but it is not the court's job to say that it should. If the market does distinguish FLSA and Title VII *retaliation* cases, then, presumably, defendants could submit affidavits saying so. It is not enough to say that courts have distinguished these types of cases (much less, straight overtime cases like *Small*) and, therefore, any affidavits to the contrary will be unpersuasive. On remand, it is possible that Rossiello's affidavits could be unpersuasive for some other reason—in other words, we do not deny that "the district court is entitled to determine the probative value of each submission," *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 895 (7th Cir. 2001)—but the district court cannot make a priori declarations about prevailing market rates. That's what the affidavits are for.

Once the affidavits were set aside, the district court considered evidence of Rossiello's fee awards in similar cases. The court concluded that Rossiello did not establish "that he was ever awarded a $600 rate in any FLSA case where his fee was challenged." The highest *challenged* rate he had recovered was $375, so the court decided that was reasonable and what he should receive in this case. But as we reemphasized in *Pickett* (another case involving Rossiello, incidentally), "[n]othing in the case law requires that a party show that the hourly rate they have requested has previously been disputed and upheld . . . . Indeed, a previous attorneys' fee award is useful for establishing a reasonable market rate for

similar work whether it is disputed or not." 2011 WL 6287923, at *9 (quoting *Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs*, 553 F.3d 487, 491 (7th Cir. 2009)). It was therefore an abuse of discretion for the district court to set Rossiello's rate by considering only cases where his fees were challenged.

*Costs.* Under 29 U.S.C. § 216(b), Johnson is also entitled to "the costs of the action." Because the district court concluded that it was unreasonable for Johnson's case to go to trial, it refused to award Johnson costs associated with trial. For the reasons just explained, that was incorrect. Accordingly, on remand, Johnson should be awarded trial costs.

As we said at the outset, this opinion addresses only the district court's lodestar and costs calculations. That process will need to be undertaken anew for the reasons indicated. A determination of the hours reasonably expended and the reasonable hourly rate is a matter addressed, in the first instance, to the district court's discretion.

The judgment of the district court is REVERSED and the case is REMANDED for calculation of fees and costs consistent with this opinion.