In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 19-1456

DEMARCO NICHOLS,

*Plaintiff-Appellant,*

and

LONGO & ASSOCIATES, LIMITED,
et al.,

*Appellants,*

*v.*

ILLINOIS DEPARTMENT OF TRANSPORTATION,
et al.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cv-01789 — **Thomas M. Durkin**, *Judge.*

_____

ARGUED JANUARY 22, 2021 — DECIDED JULY 7, 2021

_____

Before RIPPLE, KANNE, and SCUDDER, *Circuit Judges.*

RIPPLE, *Circuit Judge*. Attorney Joseph Longo represented Demarco Nichols, the plaintiff in this employment discrimination action against the Illinois Department of Transportation ("IDOT"). When his client prevailed, Mr. Longo petitioned the district court for attorneys' fees and costs under the fee-shifting provision of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e-5(k). The district court concluded that Mr. Longo, in his fee petition, inflated his hourly rate and grossly overstated the hours that an attorney reasonably could have expended litigating this action. In the end, the district court awarded Mr. Longo $774,584.50 in fees and $4,061.02 in costs. Mr. Longo now appeals. He contends that the district court applied an erroneous legal framework and abused its discretion when it reduced his rate and hours. Because the district court acted well within its discretion, we affirm its judgment.

## I

## BACKGROUND

The underlying discrimination case was tried to a jury and resulted in a judgment of $1.5 million in damages (later reduced to the statutory cap of $300,000) and $952,156 in equitable relief. Neither the jury's verdict nor the equitable relief that Mr. Nichols received is at issue in this appeal. Instead, our task today is to resolve a dispute over the district court's application of Title VII's fee-shifting provision, 42 U.S.C. § 2000e-5(k).

Mr. Longo petitioned for $1,709,345 in attorneys' fees and $4,460.47 in costs. He submitted that his hourly rate was $550 and that he had worked 3,107.9 hours on Mr. Nichols's case. Mr. Longo also requested a 15% upward adjustment

based on (1) his assertion that Mr. Nichols's case was "risky"[1]; (2) the successful outcome he achieved; and (3) the ability of a large fee award to act as a deterrent against future misconduct. For its part, IDOT vigorously contested Mr. Longo's fee calculation. In IDOT's view, an appropriate fee award was $286,931.02, which included a downward adjustment based on IDOT's contention that Mr. Longo's litigation conduct had inflated inappropriately his fee request.

The district court combed through Mr. Longo's voluminous fee petition and ultimately awarded $774,584.50 in fees and $4,061.02 in costs. In its opinion, the district court explained why Mr. Longo's requested rate and hours were both unreasonable. The district court first calculated the lodestar, which is the reasonable hourly rate multiplied by the reasonable hours worked. Relying on other then-recent fee awards for Mr. Longo, the court set the reasonable hourly rate at $360 for attorney work and $125 for paralegal work. Scrutinizing the hours submitted, the district court reduced Mr. Longo's request by 962.1 hours. The court explained that the reduction included 109.2 hours that Mr. Longo had billed for trips from his office to the downtown Chicago courthouse; 18.5 hours for paralegal work billed at an attorney's rate; a further 10% reduction (298.0 hours) for excessive billing for clerical work; and another 20% reduction (536.4 hours) for general excessive billing.

In the end, the court permitted Mr. Longo 2,145.8 hours at an attorney's rate and 18.5 hours at a paralegal's rate, which set the lodestar at $774,584.50. The district court then

---

[1] R.290 at 18.

turned to the parties' requests for adjustments and conclud-ed that neither an upward nor downward adjustment was warranted. Lastly, the district court denied Mr. Longo's re-quest for fees for litigating the fee petition, noting that Mr. Longo's lack of billing judgment and his overly volumi-nous fee petition made such an award inappropriate. As a result, the court awarded the lodestar amount to Mr. Longo, who now appeals that fee award.

## II

## DISCUSSION

Mr. Longo's appellate brief touches on virtually every aspect of the district court's decision to award him fees be-low the amount he requested.[2] He claims that the district court committed both legal error and abused its discretion. All of Mr. Longo's contentions in his appellate brief are mer-itless. Some are simply frivolous. Although we do not im-pose sanctions today for Mr. Longo's apparent failure to heed past opinions critical of frivolous fee litigation conduct, we are unlikely to countenance such behavior in the future.[3]

---

[2] The district court exercised its jurisdiction under 28 U.S.C. § 1331. We exercise ours under 28 U.S.C. § 1291. *See Palmer v. City of Chicago*, 806 F.2d 1316, 1318 (7th Cir. 1986) ("Attorney's fees usually are awarded af-ter the final judgment; since there is then nothing else pending in the district court, the fee award is a final order in an uncontroversial sense, appealable under 28 U.S.C. § 1291."). Mr. Longo and his law firm are appropriate appellants for purposes of this appeal, which involves only the attorneys' fees and costs award. *See Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 741–42 (7th Cir. 2003).

[3] Our warning today should come as no surprise to Mr. Longo, who has had his fee litigation conduct repeatedly criticized by district courts in

(continued … )

With that, we will address Mr. Longo's contention that the district court committed legal error, then turn to his assertion that the court abused its discretion.

### A.

Mr. Longo submits that the district court "utilize[d] the wrong methodology/legal analysis" when it set his fee award.[4] We review de novo whether the district court applied the correct legal framework for deciding a fee award. *See Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009).

Mr. Longo's argument is plainly frivolous. The analytical framework relevant here is well established and straightforward. "The award's size is a function of three numbers: the hours worked, the hourly rate, and any overall adjustments up or down." *Sommerfield v. City of Chicago*, 863 F.3d 645, 650 (7th Cir. 2017). A court starts by determining the "lodestar,"

---

( … continued)

our circuit. *See, e.g.*, *Smith v. Rosebud Farm, Inc.*, No. 11-cv-9147, 2018 WL 4030591, at *4 (N.D. Ill. Aug. 23, 2018) ("Even a cursory review of the docket reveals that [Mr. Longo's] submissions regularly cited incorrect and/or irrelevant authorities and often were of questionable necessity or utility."); *Sommerfield v. City of Chicago*, 2012 WL 5354987, at *3 (N.D. Ill. Oct. 29, 2012), *report and recommendation adopted*, 2013 WL 139502 (N.D. Ill. Jan. 10, 2013), *aff'd*, 863 F.3d 645 (7th Cir. 2017) ("[Mr. Longo's] willful misconduct time and time again results in needless and unreasonable expenditures of time for which he invariably seeks compensation through inflated fee awards and that courts have repeatedly condemned his behavior in published opinions that could not be more critical of a lawyer.").

[4] Appellant's Br. 1.

which is the attorney's reasonable hourly rate multiplied by the hours the attorney reasonably expended on the litigation. *Id.* (quoting *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012)). Once the court calculates the lodestar, it then may determine whether an adjustment is warranted under the case-specific circumstances. *Id.* If a plaintiff requests fees for the fee award litigation, the court will also determine that after calculating the lodestar. *See Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 894 (7th Cir. 2001); *see also, e.g.*, *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565–66 (1986).

There is no question that the district court applied the correct legal framework. It started by determining Mr. Longo's reasonable hourly rate and multiplying that rate by the number of hours Mr. Longo reasonably had expended on Mr. Nichols's case. The court then considered and denied Mr. Longo's request for an upward adjustment and IDOT's request for a downward adjustment. Finally, the court denied Mr. Longo's request for fees for the fee-stage litigation. This methodology matches perfectly the legal framework set out in our case law.[5] *See, e.g.*, *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639–40 (7th Cir. 2011).

---

[5] Indeed, we have every reason to assume that Mr. Longo was well aware of the correct legal framework. We explained it just a few years ago in *Sommerfield v. City of Chicago*, 863 F.3d at 650, another case in which a district court concluded that Mr. Longo petitioned for an unreasonable fee award. He should have had no doubt that the district court in this case applied the correct legal framework.

**B.**

Mr. Longo also challenges much of the district court's application of the methodology we just discussed in calculating the lodestar, in addressing his upward adjustment request, and in denying him fees for litigating the fee petition. We review an award of attorneys' fees for abuse of discretion, *Montanez v. Simon*, 755 F.3d 547, 552–53 (7th Cir. 2014), and "give the district court the benefit of the doubt," *Sommerfield*, 863 F.3d at 650.

First, Mr. Longo claims that the district court abused its discretion in setting his reasonable hourly rate at $360. He invites our attention to six affidavits from other attorneys that he submitted alongside his petition to substantiate that his requested $550 hourly rate was reasonable. The district court thoroughly examined the affidavits and found them insufficient. That decision was far from an abuse of discretion. The court noted that three of the affidavits did not state the affiant's own hourly rate; instead, they were merely conclusory. We have held that district courts may refuse to credit conclusory affidavits. *See Montanez*, 775 F.3d at 554. The district court also found the other three affidavits—those from attorneys David Lee, Aaron Maduff, and John Moran— unpersuasive. Lee's affidavit did not specifically address fees in employment cases like this one, and his qualifications far exceeded Mr. Longo's; Maduff's was too general; and Moran's did not list a judicially approved or client-paid amount for work in similar employment cases. The district court acted within its discretion in examining the persuasiveness of each affidavit; it gave sufficient reasons for finding each unpersuasive. *See Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001) (noting that a

district court is entitled to weigh the probity of affidavits submitted to support a fee request). Mr. Longo also takes issue with the district court's discounting of his own affidavit. The district court, consistent with our case law, concluded that Mr. Longo's affidavit was entirely conclusory and thus unpersuasive. *See Harper v. City of Chi. Heights*, 223 F.3d 593, 604 (7th Cir. 2000) (noting that "an attorney's self-serving affidavit alone cannot establish the market rate for that attorney's services"). In short, none of the district court's conclusions constitute an abuse of discretion.

Second, Mr. Longo claims that the district court abused its discretion when it relied on a prior case involving him in order to determine the reasonable hourly rate. The court observed that another judge in the district had set Mr. Longo's reasonable hourly rate at $360, and it found that judge's reasoning persuasive. *Smith v. Rosebud Farm, Inc.*, No. 11-cv-9147, 2018 WL 4030591, at *5 (N.D. Ill. Aug. 23, 2018). This determination, too, was not an abuse of discretion. Recent fee awards from an attorney's other cases provide a useful comparison when establishing that attorney's reasonable rate. *See, e.g., Jeffboat, LLC v. Dir., Off. of Workers' Comp. Programs*, 553 F.3d 487, 491 (7th Cir. 2009) ("[A] previous attorneys' fee award is useful for establishing a reasonable market rate for similar work."). The district court was especially reasonable to rely on *Smith* because that litigation overlapped with the litigation in this case.

Third, Mr. Longo submits that the district court abused its discretion by refusing to award him fees for the time he spent travelling to the courthouse for hearings. Under our case law, we presume "that a reasonable attorney's fee includes reasonable travel time billed at the same hourly rate

as the lawyer's normal working time." *Henry v. Webermeier*, 738 F.2d 188, 194 (7th Cir. 1984). We explained in *Henry* that "*if* [attorneys] charge their paying clients for travel time they are entitled to charge the defendants for that time in a case such as this where the plaintiffs have shown a statutory right to reasonable attorneys' fees." *Id.* (emphasis added). But we have emphasized that "if the travel is unnecessary the time spent in travel should be subtracted out." *Id.*

The district court did not categorically deny Mr. Longo fees for time spent traveling. Rather, the district court simply determined that the hours Mr. Longo submitted for trips from his office to the downtown Chicago courthouse were unreasonable. For each roundtrip, Mr. Longo billed 2.8 hours, which amounts to $1,008 at the reasonable $360 per hour rate (or $1,540 at the $550 rate Mr. Longo urges us to award). Mr. Longo's voluminous petition gives no hint that he bills paying clients every time he drives to court; especially in a case like this where he made thirty-nine such trips. *Cf. id.* (explaining that if an attorney charges paying clients for travel time, then defendants must pay for such time under a fee-shifting statute).

More fundamentally, the district court noted that it "allows parties to appear by phone and encourages parties to do so to avoid unnecessary expense to clients and wasted time to counsel, making travel time even less necessary for all but the trial or lengthy contested hearings."[6] Mr. Longo

---

[6] R.305 at 18. The distance between an attorney's place of practice and the courthouse is a factor that can be considered in determining whether it was reasonable to use an option other than an in-person appearance. But a trial judge must take into account that attorneys have every right to

(continued … )

ignored that option. On the other hand, the district court awarded Mr. Longo's request for attorneys' fees for his travel to depositions. This fits neatly with our holding in *Henry*: reasonable travel warrants attorneys' fees, but unnecessary or unsupported travel does not. We therefore cannot say that the court abused its discretion when it denied Mr. Longo fees for travel to and from his office.

Fourth, Mr. Longo challenges the district court's denying his request for an upward adjustment. He claims that he deserves such an adjustment because of the success he achieved in this case and as a means to encourage other lawyers to take similar cases. Upward adjustments, however, are appropriate only in "rare" or "exceptional" cases. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) (internal quotation marks omitted). Indeed, the lodestar is presumptively sufficient to induce a capable attorney to take on a meritorious civil rights case. *Id.* Here, the district court reasonably concluded that Mr. Nichols's case was not rare or exceptional. Although Mr. Longo claimed it was rare to achieve a successful verdict for a Muslim plaintiff like Mr. Nichols in a discrimination case, the district court correctly noted that Title VII plaintiffs are often members of minority groups and thus this case is not rare in that respect.

---

( … continued)

consider the accessibility of their office to their clients when determining the situs of their practice. The mere fact, then, that an attorney has chosen an office located outside of an urban center does not preclude an award of fees for travel from that office to the courthouse. The key questions remain whether the attorney has adequately supported their fee petition and whether their request is reasonable under the circumstances.

The court also correctly noted that the lodestar in this case was sufficient to achieve the fee-shifting statute's goal of attracting qualified lawyers to take similar cases. The district court's determination was certainly within its discretion; indeed, its reasoning is persuasive.

Fifth, Mr. Longo takes issue with the district court's decision not to award fees for the fee petition litigation. Again, the district court did not abuse its discretion. We have frowned upon lawyers who litigate fee awards with greater vigor than any other issue. *See Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544, 554 (7th Cir. 1999). We also have instructed those seeking fees to review carefully their petition and cut unnecessary costs. Mr. Longo, as the district court noted, demonstrated no such billing judgment. Instead, he submitted a voluminous billing record that included plainly inappropriate entries. For example, Mr. Longo billed 284.8 hours for a summary judgment response that the district court commented "was not particularly effective or well-organized."[7] He billed 250.1 hours for reviewing IDOT's summary judgment documents, an amount of time the district court found "simply ridiculous."[8] He billed 0.2 hours (twelve minutes) for reading even the shortest emails from IDOT's counsel. He billed a full attorney's rate for paralegal tasks. He billed an hour for motions hearings that lasted mere minutes. He served interrogatories and document requests with such breadth and volume that the magistrate judge overseeing discovery ordered Mr. Longo to seek

---

[7] R.305 at 21.

[8] *Id.*

leave of court before requesting additional discovery. We have no trouble concluding that the district court was within its discretion to deny fees for the fee petition litigation.

Mr. Longo also contests a few other aspects of the district court's opinion but provides no coherent argument to support his discontent. For instance, Mr. Longo appears to challenge the district court's decision to reduce his hours (after the other targeted reductions) by 20% based on his excessive billing. But he does not provide any explanation for his assertion that the district court erred in determining the reduction percentage. And we have said that district courts need not undertake a line-by-line inquiry when the voluminous nature of a petition makes doing so impractical. *See Tomazzoli v. Sheedy*, 804 F.2d 93, 98 (7th Cir. 1986) ("We endorse the court's [lump-sum] approach as a practical means of trimming fat from a fee application; it is generally unrealistic to expect a trial court to evaluate and rule on every entry in an application."). Elsewhere, Mr. Longo says the district court based its decision on "thoughts/feelings" and viewed his petition with a "negative lens," but he does not explain what that means.[9] In any event, upon examination of the record, we are confident that the district court fairly applied the law to the facts of this case. Mr. Longo's conclusory statements do not present a coherent argument or give us any basis to disturb the award.

## Conclusion

Mr. Longo submitted a voluminous and unreasonable fee petition. The district court meticulously, fairly, and correctly

---

[9] Appellant's Br. 6, 10.

applied our case law and awarded reasonable attorneys' fees and costs. We, therefore, affirm the district court's judgment.

AFFIRMED